```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF WYOMING

 3   ─────────────────────────────────────────────────────────
     UNITED STATES OF AMERICA,    |   DOCKET NO. 22-CR-00028-ABJ
 4                                |
             Plaintiff,           |   (Pages 1 through 33)
 5                                |
             vs.                  |
 6                                |
     JOSEPH LEE BEECHER,          |   Cheyenne, Wyoming
 7                                |   Tuesday, August 20, 2024
             Defendant.          |   11:07 a.m.
 8   ─────────────────────────────────────────────────────────

 9

10         TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS

11         BEFORE THE HONORABLE ALAN B. JOHNSON
                 UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14   For the Plaintiff:      MARGARET VIERBUCHEN
                             ASSISTANT UNITED STATES ATTORNEY
15                           DISTRICT OF WYOMING
                             2120 Capitol Avenue, Fourth Floor
16                           Cheyenne, WY 82001

17   For the Defendant:      JOSEPH LEE BEECHER
                             Pro Se
18
     Standby Counsel:        THOMAS A. FLEENER
19                           FLEENER LAW, PC
                             506 South Eighth Street
20                           Laramie, WY 82070

21

22           MELANIE L. HUMPHREY-SONNTAG, RDR, CRR, CRC
                   Federal Official Court Reporter
23       2120 Capitol Avenue, Room 2228, Cheyenne, WY 82001
             307.433.2169 * MelanieSonntagCRR@gmail.com
24
             Proceedings reported with realtime stenography;
25       transcript produced with computer-aided transcription.
```

1       (Proceedings commenced 11:07 a.m., August 20, 2024,

2  within the presence of the defendant in custody.)

3             THE COURTROOM DEPUTY:  Court is now in session.

4             THE COURT:  Thank you.  Please be seated, everyone.

5             We're here this morning in a -- a pretrial conference

6  mode in the case of the United States of America, plaintiff,

7  against Joseph Lee Beecher, defendant, under Criminal

8  Docket 22-CR-00028.

9             And present today is Margaret Vierbuchen, the

10  attorney in charge of this case, Assistant United States

11  Attorney.  The defendant, Mr. Beecher, is present here in

12  court today, representing himself.  His standby counsel,

13  Mr. Thomas Fleener, is present in court, as well.

14             There are a number of matters to take up as we go

15  forward.  The Government has filed motions in limine

16  requesting the Court to conduct the voir dire in this matter

17  subject to the parties providing written submissions of

18  questions that should be submitted to the jury for the Court's

19  consideration as well as a motion in limine in the case

20  regarding self-authentication of business records that would

21  be placed into evidence by the Government from the motel,

22  I believe, as well as any other records that would qualify, in

23  their view, as business records.

24             We have an email that was received this morning from

25  the marshals service concerning the arrangement of the

1   courtroom during the trial, a matter that often arises in

2   these cases where individuals represent themselves and notably

3   where a crime of violence is the nature of the charge.

4           Is the Government ready to proceed?

5           MS. VIERBUCHEN:  Yes, Your Honor.

6           THE COURT:  Very well.

7           MS. VIERBUCHEN:  Thank you, Your Honor.

8           Your Honor, the United States had filed, also, a --

9   a -- a -- it wasn't a -- it was supposed to be a joint status

10  request, but I was unable to confer with the defendant, so we

11  just filed one for ourselves.  And we asked, also, for this

12  pretrial conference just to address -- you know, just kind of

13  some of the procedural and how the trial will work and more so

14  for the defendant's benefit, since he's pro se, so he

15  understands kind of what the ground rules are moving forward

16  and so we don't run into any unnecessary delays.

17          But I do have, as the Court mentioned, three

18  preliminary motions that are outstanding, and I don't know the

19  defendant's position on them.

20          One is the request for the Court to conduct voir dire

21  for the reasons stated as well as the request just to --

22  that -- to find that certain records are self-authenticating.

23          And I'm happy to -- to kind of speak a little bit

24  more on each of those.  I'm -- I'm not sure that the defendant

25  will -- will object.  I -- I don't know what his positions

1  are.  So perhaps we could ask Mr. Beecher if he -- if he has

2  any objection to having the Court conduct the voir dire and

3  then go through each -- and then the other two motion in

4  limines, see if he even has an objection to business records

5  as outlined in the motions in limine.  If it pleases the

6  Court.

7        THE COURT:  That would be fine.

8        I'd received a letter from Mr. Beecher that gave me

9  some concern that he had not received the order of the Court

10 concerning his submission of anticipating the necessity

11 defense, which he had outlined in a lengthy submission to the

12 Court.  I appreciated receiving that from him and giving me

13 the opportunity to read it and better understand his closely

14 held beliefs.

15       Mr. Beecher, what has been happening in -- in terms

16 of your receiving any of these orders or motions?

17       THE DEFENDANT:  Your Honor --

18       THE COURT REPORTER:  Microphone.

19       THE DEFENDANT:  -- I can only guesstimate as to what

20 is happening as I'm in jail time and no one tells me nothing.

21       I found it absurd that I was said to have been unable

22 to be reached and my position was -- was or was not

23 ascertained because I -- I was unavailable.  Of course, I'm at

24 the same place you guys locked me up in 24/7/365, and the

25 phone works, so I didn't understand that at all.

1          And then as far as the mail goes, I -- I get it when

2     they come to my cell.  So I received the prosecution's motion

3     in limine to preclude the necessity defense on the 13th of

4     August.  I immediately sat down and wrote a response.

5          And when -- when I received that motion to limine,

6     I also received the -- the motion to have the Court solely

7     conduct voir dire.  So I received both of those at the same

8     time.

9          I sat down and wrote a -- wrote responses or motions

10    to those immediately, got them back in the mail by the 15th.

11    On the 16th I receive an order from you, sir, the Court,

12    stating that on the 8th you had already decided the motion.

13         So I'm not an attorney.  Maybe this is my ignorance;

14    maybe you could explain it.  But it was my understanding that,

15    when the prosecution files a motion of a limine, that's

16    essentially a challenge.  Right?  I mean, in -- in layman

17    terms.  She's challenging something.

18         And so it was my understanding that, as pro se, the

19    defense counsel would be able to meet that challenge with an

20    argument of my own and then the Court would take both

21    arguments into consideration and judge on grounds and merit as

22    to what -- what should happen.

23         And so for me to find out that you had already

24    ordered the necessity defense precluded on the 8th when

25    I didn't even receive notice that it was even being challenged

1    until the 13th, five days later, obviously, that gave me

2    0 percent chance of anything because it was a done deal

3    before -- before I was even made aware of it.

4            So, obviously, Perry Mason couldn't have argued that;

5    right?  And checkmate; right?  So I found that to be bull

6    excrement.

7            That being said, to take it a step further, you've

8    denied me all 33 witnesses with that.  You've denied me

9    somewhere around 50, 52 exhibits.  You denied me my defense.

10           So, basically, what you've said is "We're going to

11   allow you to -- to defend yourself but we're -- we're not

12   going to let you do so in any way, shape, or form."  So -- so

13   the joke is on me as I -- as I understand it.  Right?

14           So, basically, I can stand here and be shot at, but,

15   if I was to defend myself, why, you're not going to allow

16   that.

17           Which, to me, is basically a confession of guilt,

18   frankly, on the Court's part and the prosecution because, if a

19   woman who spent 30 years in the field of law -- I'm guessing;

20   I'm 51; she looks around my age -- plus law school, she -- she

21   should be licking her chops; right?  "I'm going to mop the

22   floor with this guy."  Right?  "This is a walk in the park.

23   It's like taking candy from a baby.  I've got this."

24           THE COURT:  Sir --

25           THE DEFENDANT:  But, yet, she's going to try to just

1   duck and dodge me?  Right?

2          What that's saying is she cannot win the argument.

3   The only reason an argument is censored is because one cannot

4   have it.  Right?

5          I'll debate anybody on anything unless there's no way

6   in hell I can win.  And then, "Oh, look at the time; I've got

7   to go.  My dinner's getting cold."  Right?  This -- this is --

8   this is classic baloney; right?

9          So, of course, you're going to win if -- if you go

10  that way.  But the thing is I know damn good and well and

11  you know damn good and well and she knows damn good and well,

12  if I put 30 doctors on that stand, that jury's going to be

13  influenced.  Right?

14          When I bring in Senator Rand Paul from Kentucky and

15  I put him on that stand, that -- that jury's going to be

16  influenced.

17          When I bring in Robert Kennedy, Jr. -- right?  And

18  you guys can say all this is irrelevant if you want.  But

19  I promise you one thing.  That frigging jury wouldn't say it's

20  irrelevant, not once they heard it.

21          So your whole -- your whole angle is "Don't let them

22  hear it," and then you've got an argument to suggest it was

23  irrelevant all along.  However, when they did hear it, they

24  may look you dead in the eye and go, "Bro, there ain't

25  nothing -- there's not a damn thing about that that's

1   irrelevant," and they're going to say "You're crooked as shit"

2   and so are you.  That's what they'll say.

3          And I told you guys once.  I knew you guys had a

4   loaded deck -- loaded dice, if you were.  You're dealing off

5   the bottom of the deck.  You had the big battalions.  You had

6   everything.  And I'm standing over here in my little fucking

7   orange pajamas; right?  So if you don't win, shame on you.

8          But I knew right then you were going to play dirty

9   because I dealt with you Feds before.  I know who you are.

10  Right?

11         Just like Cooper said.  With every intelligence

12  agency in this nation, they all work for the United Nations,

13  not the United States.  I know who you people are.  So I told

14  you once -- and I don't know how I'm going to do it yet,

15  Johnson, but I told you I would outsmart you.  Right?  Do you

16  remember me telling you that, Dude?

17         Some fucking how I'm going to outsmart you, and it

18  ain't going to be in your fucking courtroom where you control

19  everything.  Obviously; right?  Can't do a damn thing here.

20  But some fucking how, Bro, some way, I'm going to outsmart

21  you.  And the last fucking thing you see when you go in the

22  grave is my fucking ugly face.  You remember I told you that.

23         You write it in fucking blood on your forehead, Bro.

24  Fuck you.  You're a chickenshit coward mother fucker.

25         And so are you.  And your soul's going to go down

1   with him.  When I bury that mother fucker and his estate goes

2   with it, you, bitch, are going to be fucking lumped in there

3   as -- what's the word I'm looking for?  Complicit?  Right?

4         You know what was in that motion.  You know they're

5   killing people.  You don't give a fuck.  You want your little

6   conviction so you can put a little fucking nick in your --

7   your key chain.  Right?  And you can parade around and swing

8   your big dick.

9         MS. VIERBUCHEN:  Okay.  I'm going to object now.

10         THE DEFENDANT:  Yeah.  Yeah.  Object because you

11   can't win the argument.

12         So do your bullshit.  And when you get in here, you

13   can put a gag order on me, and you can parade around and talk

14   about all kinds of shit, about how your victim who's not hurt

15   and never was was the -- the terrible person that -- or there

16   was the terrible crime.  But all the people who died, you'll

17   leave out that -- what was that?  1,192,965 people won't get

18   mentioned.

19         Everyone in here, bet me on that shit.  She won't

20   mention.  But she'll talk about the person who didn't get a

21   fucking scratch on her, not a hair on her head.  She'll talk

22   about that all day long.

23         So both of you kiss my ass.

24         Object to that, bitch.

25         MS. VIERBUCHEN:  Lovely.

1      So this is why I'd asked for a pretrial conference.

2  I think it makes sense.  I still don't know his position on

3  certain motions.

4      If he could simply just answer the questions.  We're

5  establishing a record here because it seems like the defendant

6  may be losing his right to represent himself any moment now.

7      So if we could go back, have the Court instruct him

8  on -- on certain things, I -- the question, I think, as

9  I recall to the Court was -- we were asking -- was whether or

10 not he had an objection to the Court conducting voir dire.

11     THE DEFENDANT:  Of course I do.

12     It -- it goes without saying.  That's why you

13 precluded me with your mailing -- with -- when you said you

14 couldn't reach me at jail.

15     "Well, he was unavailable."  I guess he was down at

16 the bar fucking doing shots with strippers and shit.  Right?

17 Where the hell did you think I was?  Where the hell did

18 anybody think I was?  Take a good look.  Anybody confused?

19 (Indicating.)

20     Gee, I fucking wonder where he is.

21     This is bullshit.  This is chickenshit, coward shit,

22 bullshit.  And she sits over there like she's high morality,

23 and you do the same thing up on your fucking throne.  But the

24 thing is it's bullshit.

25     Anybody with a lick of common sense can take one look

1    at that and go "They're fucking railroading that dude."

2            THE COURT:  Well, I think there have to be

3    consequences for the outburst here.  If that's what the

4    defendant's plan is in terms of his trial strategy, it's now

5    revealed by him that his goal now will be to disrupt the court

6    proceedings.

7            THE DEFENDANT:  That's not true at all.  There's

8    nothing to disrupt.  You want me to stand still while you

9    shoot at me so -- fine.  I'm going to have to.  Right?

10           I know you'll just gag me.  You'll take me out, put a

11   camera in a cell -- or, hell, I don't know what you'll do --

12   put a helmet on me.  Who knows?  But whatever you do you'll

13   do; right?

14           So I know I have to sit here while you shoot at me

15   and you ignore all the reasons why.  Right?  I'm not going to

16   be allowed to say why I did what I did.

17           So, according to you, I need to invent a reason that

18   isn't the reason I did it and then give the invented reason to

19   the jury and then let them see right through the phony

20   bullshit that it will be, of course, if I invent a reason.

21           And then they'll -- they'll hang me at my --

22   they'll -- this is a lynching; right?  You're going to have to

23   hang me.  So the thing is why do we even bother with the

24   trial?  Go get the fucking rope and let's put the noose on.

25   You don't need the -- this -- it's not going to be a real

1  trial.  You're -- you're shutting down a whole side of the

2  story.

3            THE COURT:  It's not a defense.  It is not a defense

4  that is appropriate in this court.

5            THE DEFENDANT:  The United States --

6            MS. VIERBUCHEN:  Objection.  You need to allow Mr. --

7  the Judge to respond to --

8            THE DEFENDANT:  The Judge can speak for himself.

9            MS. VIERBUCHEN:  I object to him interrupting the

10 Court so that we cannot make a proper record in this

11 courtroom.

12            THE COURT:  Sustained.

13            There will be consequences, as you have outlined, if

14 you disrupt the proceedings.

15            THE DEFENDANT:  I just said I wouldn't.

16            THE COURT:  There is -- there is -- there is a public

17 interest in the proceedings.  There's also an interest in

18 these proceedings by the witnesses who were involved in your

19 arrest, the witnesses who were victimized by what you did --

20            THE DEFENDANT:  If you look up the definition of

21 "victim," you will not find one.

22            THE COURT:  Well, we will hear.  They will have an

23 opportunity to be testifying --

24            THE DEFENDANT:  There's not an injury or a death

25 amongst them.  That's the definition of a victim.  Unless

1   you're talking about sacrifice to the gods.

2           THE COURT:  There --

3           THE DEFENDANT:  Those are the three definitions of

4   "victim."

5           THE COURT:  There are ways people can be victimized

6   without being bloodied or killed.

7           THE DEFENDANT:  Kind of like steam -- railroaded at

8   trial?

9           That's victimized, is it not?

10          You're not going to count that one, though, I'm sure.

11          THE COURT:  It's just not a defense.

12          THE DEFENDANT:  It is a defense.  The United States

13  uses it every time they go to war.  "We're going to protect

14  these people so we'll kill these people," the end.  And we

15  don't say a damn thing because it's the Federal Government and

16  it's rules for thee but not for me.

17          You're going to use it again here in probably a month

18  with Iran when the -- the phony-ass bullshit terrorist attack

19  that's --

20          THE COURT:  Well, you're --

21          THE DEFENDANT:  -- getting ready to happen because

22  you guys leave the border open.  And then you're going to go,

23  "Oh, how did that happen?"  Oh, I don't know, dumbass.  You

24  left the fucking back door open for fucking 30 years.

25          They said over 160 different nationalities are coming

1    through.  Right?  And then they're going to say, "Oh, Hamas

2    did it.  Hezbollah did it."

3              Well, you let them in.  "You," as in the Federal

4    Government, whether it's you, the border patrol or not -- you

5    got an argument there, Judge, but you're wearing their

6    uniform.

7              And if you guys are going to let them in and then,

8    when whatever happens -- the other 9/11 -- which also

9    I noticed you called frivolous which, you know, you . . .

10   that's appalling.  Frivolous is the equivalent of going

11   "pfft."  And you went "pfft" to 9/11.  Right?

12             But I bet if your daughter had -- had burned up in a

13   1400-degree jet fuel fire and had her flesh melt off her

14   fucking face, you wouldn't have went "pfft."  Right?

15             Or if it had been your son that was a fireman that

16   died from all that asbestos bullshit he breathed, you wouldn't

17   have went "pfft"; right?

18             So everything to you is pfft because it isn't you.

19   But that's the only way you can win the argument.

20             Again, it's the same thing she does.  She swims it;

21   right?  She's just going to swim by it.

22             MS. VIERBUCHEN:  Objection, Your Honor, if we could

23   just get to what really we need to decide today.  This is

24   irrelevant.

25             THE COURT:  Well, let me ask you one question:  Would

1    you prefer to spend the trial, as you suggest, down in the

2    marshals' cell, where you could listen to the evidence as it

3    comes in?

4             THE DEFENDANT:  I would prefer to have time to read

5    that motion and then say "I'm guilty" to the jury.  And then

6    you've got your hanging, you've got your lynching, and

7    I've got my 15 minutes.  And it's not going to be a thing

8    because Federal Rules of Criminal Procedure No. 53 takes away

9    my constitutional right to a public trial.  Right?

10             But, still, those 12 people -- those 12 people at

11   least hear it.  See, I have a duty, unlike other people who

12   see this shit going on nonstop and they ignore it constantly,

13   just year after year.  But once I do my duty, I don't care if

14   you hang me.  I don't care what you do.  I'm done.  I did my

15   job.

16             I swore to myself I would do my job.  When my job's

17   done, I'm done.  Fucking give me the death penalty.  I do not

18   give a rat's ass.  Right?

19             But I'm going to get it said.  So whether that means

20   figuring out a way to go around this Court, this government,

21   this jail, through -- through people on the outside -- which

22   eventually it will.  But somehow, some way, I will get that

23   shit done.

24             THE COURT:  Sure.  You can tell it to the Appeals

25   Court.

 1          THE DEFENDANT:  No, I -- if I can't tell it to this
 2  court, why would an Appeals Court be any less corrupt?
 3          THE COURT:  Well, I don't know.
 4          THE DEFENDANT:  Exactly.  See, it's funny shit to
 5  you.
 6          People dying, that ain't -- that's no big deal.  But
 7  some -- a lady who got scared, why, "Hold the fucking phone."
 8  Right?
 9          But 1,192,965 deaths from a virus you know does not
10  exist beyond a shadow of a doubt -- which means, therefore,
11  they cannot be dying from it -- you must first exist before
12  you can kill something -- which means they're fucking lying.
13  If they're lying, there's obviously something to hide.
14          This is -- this is Common Sense 101.  You -- I can
15  tell this to a junior high kid and the kid will go "Yeah.
16  Yeah."
17          THE COURT:  Well, why aren't you out there doing
18  that?
19          THE DEFENDANT:  Because no one will listen.
20          THE COURT:  No one will listen.
21          THE DEFENDANT:  You are evidence.  You're supposed to
22  be an authority.  You're supposed to be a leader of the
23  community.  I'm supposed to bring problems to you.
24          I told you about Deputy Dan and Sheriff Sam in the
25  motion; right?  They do what you tell them to do.  All these

1    marshals do what you tell them to do.

2            So if I tell him anything, he's just going to look to

3    you for the nod, is he not?  So when he looks to you and then

4    you go, "Oh, irrelevant," well, he's done with it, isn't he?

5            You see?  But I'm still going to keep on keeping on

6    until I can't keep on no more.  But I -- I've made that deal a

7    long time ago.  Let me talk and fucking hang me.

8            I'm an easy guy.  I -- I never once said I was going

9    to deny this shit.  The reason you guys have made this last

10   over 2 1/2 years -- was it 2 years 7 months? -- is because you

11   kept trying to say I was crazy -- psych eval after psych eval

12   after psych eval -- instead of just let the man talk, man.

13           If I ain't got no merit to what I'm saying, then the

14   jury's going to look at -- like, for instance -- I told Tom

15   this earlier -- if I shoot somebody and I come to the jury and

16   I go, "Well, you know, I did it but you should let me slide

17   because I had a polka-dotted shirt on," well, they're going to

18   go, "Oh, no, that's bullshit."  Right?  "That's irrelevant and

19   we're not going to put up with that."

20           However, if I come to them with a legitimate argument

21   and it's making sense all the way through the entire argument,

22   why, they might find that that's quite relevant, this --

23   this -- actually does have something to do with behavior.

24           For instance --

25           THE COURT:  They don't -- I'm sorry.

1          They don't decide relevance.  The Court rules on

2     relevance.

3          THE DEFENDANT:  Yeah, but the jury is supposed to

4     judge me by my Constitution.  Nowhere in the Constitution does

5     it say that you judge me as --

6          THE COURT:  Okay.  Now you're just arguing with the

7     Court.

8          THE DEFENDANT:  You're supposed to be a neutral

9     agent --

10          THE COURT:  I --

11          THE DEFENDANT:  -- and they are supposed to judge me.

12          THE COURT:  I'm sorry.  You're interrupting the

13     Court.

14          Do you have a position with regard to the motion in

15     limine in this matter -- and you can tell me why -- concerning

16     the authentication of those records?

17          THE DEFENDANT:  Which records are you referring to?

18     The bank records?

19          THE COURT:  Yes.

20          THE DEFENDANT:  Did you ever find out whose bank

21     records those are?

22          MR. FLEENER:  It's not a bank.  It's a video.

23          THE DEFENDANT:  Oh, yeah.  That's fine.  It's

24     self-authenticating.  Yeah, I agree.  That's -- that's a waste

25     of time.  That's a duh.

 1          MS. VIERBUCHEN:  And then, Your Honor, there -- in

 2    addition to the US Bank records, which is the video

 3    surveillance, there are the Stage Coach video surveillance

 4    records.  That's the subject of the second motion.

 5          THE DEFENDANT:  It's same thing.  Yeah, it's fine.

 6          Again, I'm not going to deny it.  You guys' job is

 7    done.  It was done 2 1/2 years ago.  You guys have made this

 8    difficult.

 9          MS. VIERBUCHEN:  And I would just clarify for the

10    Court Mr. Beecher has a constitutional right to request a jury

11    trial.  He can certainly plead guilty at any point and, if

12    he'd like to do so, he can do that.

13          THE DEFENDANT:  Make me a deal.  Let me talk.

14          Right?  It's -- it's as easy-peasy.  And then you

15    can -- man, you -- you -- you can lay it on thick, however you

16    want to do it.  Right?  Hell, I don't care.  A dead man's a

17    dead man's a dead man.

18          MS. VIERBUCHEN:  So I just -- I think it's important

19    just to say that an offer -- a plea offer was extended to the

20    defendant in writing.  He has it.  If he'd like to accept that

21    today, he's welcome to accept it.

22          THE DEFENDANT:  Make me an offer that lets me talk

23    and you've got a deal.

24          MS. VIERBUCHEN:  He can certainly talk all he would

25    like to talk to -- at sentencing, Judge.

1          THE DEFENDANT:  You won't let me talk -- you and me
2     both know better than that bullshit.  You're going to let me
3     get about 10 minutes into it and you go "That's enough" --
4          THE COURT:  You said --
5          THE DEFENDANT:  -- and these all -- these all guys
6     are going to usher me out, and you're going to renege on your
7     word and then -- "Tough titty," said the kitty; right?
8          THE COURT:  Well, if it's this -- if it's this kind
9     of harangue, it's not taking us anywhere.
10          If you want to make your pitch at your sentencing
11     hearing, that's fine.  If you want to --
12          THE DEFENDANT:  Who's going to be at a sentencing
13     hearing?
14          THE COURT:  Your . . . it's a public hearing.  Anyone
15     who wants to come in the public.
16          THE DEFENDANT:  Okay.  Is there any advertising?
17     Does anyone know that it's going on?
18          Because -- I mean, that's a pretty easy enough trick.
19          THE COURT:  Well, there's a sign up on the wall, on a
20     TV set, that will say it.
21          MR. FLEENER:  Can I have a second, Judge?
22          THE COURT:  Yeah.
23      (Discussion held at counsel table.)
24          THE COURT:  Actually -- actually, your submission to
25     this Court of your necessity defense was part of the public

1    record.

2            THE DEFENDANT:  But no one sees it.

3            THE COURT:  They sure can if they want.

4            THE DEFENDANT:  How?

5            THE COURT:  They can walk to the Clerk's Office and

6    ask for it.

7            THE DEFENDANT:  So I -- I've got to have an

8    advertising campaign to go say -- hold on.  Let me speak

9    to Tom.

10           THE COURT:  This isn't a business.

11           THE DEFENDANT:  He's distracting me here.  Sorry.

12       (Discussion held at counsel table.)

13           MR. FLEENER:  Your Honor, if -- would the Court give

14   Mr. Berris one hour of un- -- uninterrupted time at

15   sentencing?  If we can --

16           MS. VIERBUCHEN:  Mr. Beecher.

17           MR. FLEENER:  I'm sorry.  Mr. Beecher.

18           -- an hour of uninterrupted time at sentencing if we

19   could get a guilty plea and avoid a jury trial.

20           THE COURT:  Well, he'll be subject to court rules and

21   court decorum in that regard and behavior to tell his story.

22           THE DEFENDANT:  Basically, I'm . . .

23       (Discussion held at counsel table.)

24           THE DEFENDANT:  The aggression comes from the

25   resistance.

1          MR. FLEENER:  Okay.

2          THE DEFENDANT:  But I've got to hear the court rules.

3     What -- I mean, if I'm going to agree to rules, let me hear

4     the rules.

5          MR. FLEENER:  Can the Court explain what decorum is,

6     what the Court would want to hear from -- wouldn't want to

7     hear at sentencing?

8          THE COURT:  Yeah.  Not attacking with -- the

9     prosecutor in this matter -- with pejorative language.

10         THE DEFENDANT:  I won't be speaking about the Court

11    at all.

12         MR. FLEENER:  Or the prosecutor.

13         THE DEFENDANT:  Hm-m?

14         MR. FLEENER:  Or the prosecutor.

15         THE DEFENDANT:  Well, she's the same to me.

16         MR. FLEENER:  Okay.

17         THE DEFENDANT:  You guys are all the same.

18         MR. FLEENER:  You just want to explain why you did

19    what you did?

20         THE DEFENDANT:  Yeah.  There's information that needs

21    to be revealed that people don't know about.  Once that's

22    done, I'm done.  I'm a simple guy.

23         THE COURT:  Well, it seems -- well, it seems to me

24    you could simply offer into evidence your written submission

25    in this matter and we'd have it.

1         THE DEFENDANT:  You've denied all my evidence.

2    You've denied everything.  I've got it right here, "No, no,

3    no, and no."

4         THE COURT:  It is not defense that is cognizable as a

5    matter of law in this courtroom.

6         THE DEFENDANT:  For the sake of argument, I'll --

7    this deal might be on to something.  I'll speak to the public,

8    and then the public can decide that, as if they were a jury.

9         THE COURT:  You can rent a hall someday.

10         THE DEFENDANT:  I don't care about the legal

11    punishments.  I want the people to know.  This thing is bigger

12    than a courtroom.

13         THE COURT:  You could . . .

14       (Discussion held at counsel table.)

15         THE COURT REPORTER:  Is this on? off?

16       (Discussion held at counsel table.)

17         MR. FLEENER:  Does the Court have time after -- could

18    we get about a half hour?  And then could the Court have time

19    to hear us in a half hour?  And maybe for a guilty plea, a

20    change of plea.

21         THE COURT:  Well, certainly, we'll -- we'll make time

22    for you.

23         MS. VIERBUCHEN:  I'm -- I'm available at the Court's

24    convenience.

25         THE COURT:  All right.  Thank you, Ms. Vierbuchen.

1           MR. FLEENER:  I'll let the Court know.

2           THE COURT:  You can explain how a sentencing

3    proceeding goes in the court during that half hour.  You've

4    been through many of them.  And -- thank you.

5           THE DEFENDANT:  Your Honor, I've got a question.

6           So I intend to read -- just because it's already

7    written -- the pretrial defense motion that you denied.  But

8    it does -- the way I wrote it was to address the -- the

9    four tenets of the necessity defense.

10          So I'd have to rewrite that or can I just read it?

11          THE COURT:  You can read it.

12          THE DEFENDANT:  Okay.  Because that -- that -- that

13   and I'm going -- I'm going to read stuff from the criminal

14   complaint until my hour's up.  And then that -- that ought to

15   be about the hour.

16          MS. VIERBUCHEN:  Your Honor, I -- I feel it's up to

17   the Court to run the hearing as the Court would like.

18   I certainly can't add that to the plea agreement.  I defer to

19   the Court as to how you would like your sentencing to proceed

20   should the defendant elect to plead guilty.

21          THE COURT:  Yeah.  I . . .

22       (Discussion held at counsel table.)

23          MR. FLEENER:  If the Court would give us a half hour,

24   I think we could get something done.

25          THE COURT:  Very well.  We'll stand in recess for

1   a -- 30 minutes.

2          THE COURTROOM DEPUTY:  All rise.

3          MS. VIERBUCHEN:  Is it all right if we leave our

4   materials here, Your Honor?

5          THE COURT:  Yes.  As far as I'm concerned, that would

6   be fine.

7          MS. VIERBUCHEN:  There's -- there's no one after us?

8          THE COURT:  Not until later.

9          MS. VIERBUCHEN:  Got it.

10         THE COURTROOM DEPUTY:  Court will stand in recess for

11  30 minutes.

12      (A recess was taken from 11:42 a.m. to 12:29 p.m.)

13         THE COURTROOM DEPUTY:  Court is now in session.

14         THE COURT:  Thank you.  Please be seated.

15         We are resuming the pretrial proceedings in the case

16  of the United States against Joseph Lee Beecher.

17         Present is Margaret Vierbuchen; Mr. Beecher, who is

18  defending himself; and Tom Fleener, standby counsel.

19         Has anything occurred over the last half hour?

20         MS. VIERBUCHEN:  Your Honor, if I could address

21  Mr. Beecher.

22         Mr. Beecher, did you want to address the Court, let

23  him know what you were thinking, what we discussed about

24  continuing this to give you some time to review that?

25         THE DEFENDANT:  Yes, Your Honor.

1          I just need a night to take this in and, essentially,

2    sleep on it.  And so . . . I let the prosecution know I'd make

3    my decision tomorrow and we'll go from there.

4          THE COURT:  Very well.

5          MS. VIERBUCHEN:  If I may also add on -- and,

6    Mr. Beecher, if you'll correct me if I get anything wrong.

7          So what we were thinking -- because Mr. Fleener is

8    not available tomorrow, Your Honor; he's in court all day

9    tomorrow in Casper -- or -- or most of the day.

10         And so what Mr. Beecher and I discussed was, if it

11   pleases the Court, we could -- if he's going to accept the

12   plea, he's going to send a copy -- he's going to fax it; we've

13   given him a fax number.  I've agreed to reach out to somebody

14   at the jail to see if they can help facilitate the faxing of

15   the plea agreement.

16         If he signs it, he's going to have it faxed to me --

17   or try his best to get it faxed to me.  And then I will -- if

18   that doesn't work, he'll bring a hard copy with him on -- on

19   Thursday, and then we'll determine if it's going to be a plea.

20   Or if -- we could resume this matter that was set for a

21   pretrial conference if he does -- if he doesn't sign the plea

22   agreement and does not want to plead guilty, we'll just go

23   ahead and finish the hearing that we started before we got --

24   before it was interrupted with the possibility of a plea

25   agreement.

1          Sir, does that sound right?

2          THE DEFENDANT:  That sounds correct.

3          THE COURT:  Very well.  I believe we've set a hearing

4     in this matter for Thursday.

5          Would it help Mr. Beecher to have in his

6     possession -- would it be improper for me to know what he'll

7     be pleading to or what the plea will be to?

8          MS. VIERBUCHEN:  Are you -- do you -- are you

9     comfortable sharing it with the Court?

10         I -- what I would do, Your Honor, if -- if I do --

11    just because I'm --

12         THE COURT:  Well, here's the only one concern I have.

13         MS. VIERBUCHEN:  Okay.

14         THE COURT:  He will have to, on his plea, provide a

15    factual basis for each offense.  He needs to have -- or know

16    what the elements are in order to be able to provide that

17    factual basis.

18         MS. VIERBUCHEN:  That's correct, Your Honor.

19         And, Mr. Beecher, if I --

20         THE DEFENDANT:  That's basically the admission you

21    were talking about?

22         MS. VIERBUCHEN:  Yeah, yeah.

23         And so we had an opportunity to discuss that.  In the

24    plea agreement that -- that he has -- it's a written plea

25    offer -- it has the elements outlined.  I explained that he

1  would have to meet those elements, and we -- and I've given

2  him a proposed statement of fact that, if we can agree to

3  them, he -- we -- he could just adopt a statement of facts

4  that I've already put in one of my motions, Your Honor.

5          So, as I understand it, Mr. Beecher, is -- you're

6  aware of -- of your requirement that you be prepared to admit

7  your conduct.

8          THE DEFENDANT:  Correct.

9          MS. VIERBUCHEN:  And we discussed that we -- the

10  statement of facts that I gave you at Document Entry 83.

11          THE DEFENDANT:  Right.  Yeah.

12          MS. VIERBUCHEN:  And you'll review that to see if you

13  have any changes?  You can make changes directly to the

14  document.

15          THE DEFENDANT:  Sure.

16          MS. VIERBUCHEN:  And then -- so he -- so my

17  understanding is he is aware that he needs to provide a

18  factual basis to support the plea.

19          THE COURT:  Very well.

20          MS. VIERBUCHEN:  Is that right, sir?

21          THE DEFENDANT:  Correct.

22          MS. VIERBUCHEN:  Okay.

23          THE COURT:  That satisfies me.  And we'll see what

24  happens on Thursday.

25          MS. VIERBUCHEN:  And I didn't have anything else,

1    Your Honor.  Thank you for the -- your consideration.

2         THE COURT:  And I think the jury will be drawn on

3    Thursday if the plea doesn't occur.

4         MS. VIERBUCHEN:  Can I inquire of the Court -- what

5    time did we set the matter for on Thursday?

6         MR. FLEENER:  9:30.

7         MS. VIERBUCHEN:  Okay.  Thank you.

8         MR. FLEENER:  I'm sorry.

9         MS. VIERBUCHEN:  Can we at least wait until 9:45

10   before we pull the jury, or is it too late by that point?

11        THE COURT:  No.

12        MS. VIERBUCHEN:  Okay.

13        THE DEFENDANT:  So -- so I will be involved if

14   I don't take the plea?  I mean, as it stands now anyway.

15        MS. VIERBUCHEN:  If -- can I answer that question?

16        I think -- I -- yes.  So if -- my -- the

17   understanding of the United States, if the plea is not

18   accepted, we will resume this hearing and prepare for trial.

19        THE DEFENDANT:  Right.  And then would you --

20        MS. VIERBUCHEN:  And you will be present for all of

21   that.

22        THE DEFENDANT:  Well, will I be allowed to

23   participate in the voir dire?  Or however you say that French

24   word.

25        THE COURT:  Neither party will.  Your participation

1   will be providing the Court, for review, questions pertaining

2   to the charge and jury selection.

3          MS. VIERBUCHEN:  And to be clear, the voir dire was

4   due yesterday.

5          THE COURT:  I understand.  But we would extend

6   additional time.

7          MS. VIERBUCHEN:  So -- and I have no objection to

8   that.  We would then have to take up the motion as to how --

9   the Government's motion in limine on that voir dire.

10         So that would be decided on Thursday if you elect not

11   to enter a plea.

12         THE DEFENDANT:  Yeah.  I sent in the motion

13   challenging being removed from voir dire, and I -- he probably

14   just got that yesterday, I would imagine.

15         THE COURT:  It's not that you're totally removed from

16   voir dire.  The Government's removed, as well.

17         THE DEFENDANT:  So that leaves just the prosecution?

18         THE COURT:  No.  It just leaves me.

19         THE DEFENDANT:  Oh.  Right.

20         That was her -- but I was challenging that --

21         THE COURT:  Right.

22         THE DEFENDANT:  -- correct?

23         Has that been decided?

24         MS. VIERBUCHEN:  I -- I don't think there's been a

25   ruling on it, Judge.

1           THE COURT:  I haven't signed it.

2           THE DEFENDANT:  Okay.  Can we --

3           THE COURT:  I have a proposed order that --

4           THE DEFENDANT:  I mean, I -- that can wait until

5    I make up my mind, obviously.  It's not necessary if

6    I sign it.

7           MS. VIERBUCHEN:  And I -- I think that's correct.

8    But it's up to the Court since -- the Court's understanding of

9    where we are in that.

10          THE COURT:  On the question of voir dire?

11          MS. VIERBUCHEN:  Uh-huh.

12          THE COURT:  The Court will make a decision -- or

13   publish its decision -- concerning Court voir dire with both

14   parties being allowed to contribute written questions, which

15   the Court may submit to the jury or it may not.

16          THE DEFENDANT:  Is there a certain criteria that

17   determines how -- how you're going to go on those?

18          THE COURT:  Yes, there is criteria.

19          THE DEFENDANT:  I don't know that I'm aware of that

20   criteria.

21          THE COURT:  Okay.  Questions asking the jury to

22   decide the case on hypothetical questions is verboten.

23   Questions asking the jury to speculate as to how they would

24   rule on any kind of set of facts, asking the jury to commit to

25   certain verdicts would be improper at the time.

1          The inquiry is one that is aimed at understanding the

2   jury, whether or not they could fairly listen to the evidence

3   in the case, consider it, and determine -- make a

4   determination.

5          THE DEFENDANT:  Okay.

6          MS. VIERBUCHEN:  I have nothing further, Your Honor.

7          THE COURT:  All right.  We'll stand in recess, then.

8          THE COURTROOM DEPUTY:  All rise.

9          THE COURT:  You know, the questions and issues raised

10  by the marshals office in this matter -- I think both sides

11  have seen those and need to have some consideration of them.

12  That is the issue of dress, the issue of whether or not the

13  defendant remains handcuffed, shackled, whether or not the

14  tables then would be skirted to disguise that.

15         MR. FLEENER:  Your Honor, the plan is going to be to

16  dress him out in street clothes.  I know that.  And so

17  assuming -- if Mr. Beecher changes his plea on Thursday,

18  I don't worry about it.  But, if not, he'll be dressed in

19  street clothes.

20         And I always assumed that his hands wouldn't be

21  shackled and his feet would be and we'd be draped, but those

22  are my thoughts.  That's how we did the last trial.

23         THE COURT:  Yeah.

24         MS. VIERBUCHEN:  Yeah, and we'll be prepared to

25  address that, Your Honor, on Thursday.

1          THE COURT:  Very well.  Thank you.

2          THE COURTROOM DEPUTY:  Court will stand in recess

3   until 1:30.

4      (Proceedings adjourned at 12:38 p.m., August 20, 2024.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E
2
3
4
5          I, MELANIE HUMPHREY-SONNTAG, Federal Official Court
6    Reporter for the United States District Court for the District
7    of Wyoming, a Registered Diplomate Reporter, Certified
8    Realtime Reporter, and Certified Realtime Captioner, do hereby
9    certify that I reported by realtime stenography the foregoing
10   proceedings contained herein on the aforementioned subject on
11   the date herein set forth and that the foregoing pages
12   constitute a full, true, and correct transcript.
13
14         Dated this 22nd day of August, 2024.
15
16
17
18                  /s/ Melanie Humphrey-Sonntag
19         _____
20                  MELANIE HUMPHREY-SONNTAG
                         RDR, CRR, CRC
21                Federal Official Court Reporter
22
23
24
25